## Merrick's Estate.

Where goods are sold by a factor here for a principal abroad, and the factor dies before payment, his authority is revoked, and a payment to his administrator by the purchaser is a mispayment.

If such administrator receives the money, it ought not to be involved in his accounts in the settlement of the intestate's estate, either as general or special assets, nor can the Orphans' Court or the Supreme Court on appeal make any order in favour of the principal on such settlement of accounts.

Money so received by the administrator is trust estate and can be followed in his hands or those of his representatives only by a bill in equity or perhaps here by an action for money had and received.

THE facts of this case are stated in the former report of it in 5 *Watts & Serg.* 9. In the Orphans' Court an auditor had been appointed upon the accounts of the administrators of Samuel Merrick, deceased, to make distribution among the creditors, who reported on the 13th March 1841 the sum of $7209.24 principal and interest as payable by John Vaughan, administrator of said estate, to the assignees of William Walker. This report the Orphans' Court confirmed. On appeal to this court the fund was decided to be payable to the assignee of William Roberts, Jun. On the 4th January 1845, on motion of Mr Miles, this court permitted the name of George Young, assignee of William Roberts,

[Merrick's Estate.]

Jun., to be appended to the record as a party claiming the fund, and granted two rules, one on all parties interested to show cause why Jacob Snyder, Jun., executor of John Vaughan deceased, who was the administrator of Samuel Merrick deceased, should not pay the amount awarded by the Orphans' Court to the said George Young. 2. To show cause why John B. Newman, Samuel H. Thomas and Josiah Randall, executors of B. Dahlgren, who was the assignee of John Vaughan, who was the administrator of Samuel Merrick deceased, should not pay the said sum to the said George Young. Answers were put in by the parties respectively, but the question which the court decided was whether the fund, which was in the hands of the executors of B. Dahlgren, could be reached by this mode of proceeding.

*Miles,* for the assignee, contended it could, assuming that the money was in their hands, but there was some dispute amongst themselves. They were assets of Merrick's estate, and so considered and adjudged below; not ordinary assets, but such as might be termed special assets, distinguishable from the estate of Merrick, and appropriated by law as well as by the acts of Mr Vaughan, to the payment of this claim. The powers of the Orphans' Court have been much extended by the Act of 29th March 1832, section 4, *Purd.* (1841) 808. They have jurisdiction in the distribution of assets among creditors or others interested. It was a devastavit for Vaughan to pass them away; and moreover, these defendants have made themselves parties. The Orphans' Court is a court of equity, and having the fund under its control, will act in respect to it for all purposes that justice and equity require. *Guier* v. *Kelly,* (2 *Binn.* 299); *M'Coy* v. *Porter,* (17 *Serg. & Rawle* 60). By the Acts of 14th April 1835, and 16th June 1836, the Supreme Court on appeal are to decide according to right and equity. *Mylin's Estate,* (7 *Watts* 64); *Aycinena* v. *Peries,* (6 *Watts & Serg.* 243).

*Randall,* contra. The fund came into Vaughan's hands after Merrick's death, and could not be assets of Merrick's estate. It was trust property, and not embraced in the settlement of Merrick's estate. The case of *Aycinena* v. *Peries* decides the point in our favour, that the Orphans' Court had no jurisdiction, nor could the court get it by the application or consent of parties. The Orphans' Court is a court of limited jurisdiction. 1 *Law Journ.* 321; *Grider* v. *M'Clay,* (11 *Serg. & Rawle* 231); *Purviance* v. *Commonwealth,* (17 *Ibid.* 37); *Metts's Appeal,* (1 *Whart.* 7); *Hassler's Appeal,* (5 *Watts* 176); *Gossner's Estate,* (6 *Whart.* 403); *Olwine's Appeal,* (4 *Watts & Serg.* 492); *Merrick's Estate,* (5 *Ibid.* 20); *Warner's Estate,* (2 *Whart.* 295). The Orphans' Court had no jurisdiction over the claim of adversary creditors, and as to them their decree is void.

The opinion of the Court was delivered by

GIBSON, C. J. — It is a decisive answer to the rule in this case, grafted as it is on the report of an auditor to make distribution among the creditors of an insolvent intestate, that the money in question is no part of the assets. Mr Merrick, the intestate, was the factor of Walker and Coggill, an English house, to whose title the present claimants have succeeded; and the money in contest is the price of goods sold by him as the property of the house, but received by Mr Vaughan, one of his administrators; and consequently not as the intestate's property, whatever Mr Vaughan himself may have supposed; but, in contemplation of law, as a portion of the partnership effects. Had it been part of the intestate's assets, it must have gone in a course of administration to pay the general creditors, the English house coming in *pro rata* as a creditor on its own property; but that the money was not so considered by Mr Vaughan himself, is manifest from the fact that he set it apart for the house in the hands of a trustee, as what has been called in the course of the argument, *special* assets — the meaning of which I am unable to conjecture. Assets are said to be real or personal, legal or equitable; but a distinction between general and special, I believe, has been taken only in the present proceeding. It was this unlucky phrase which, seeming to solve all difficulties at the outset, drew the attention of all concerned from an inquiry into the nature of the title, and made the record of this proceeding a budget of blunders in which this court participated. It would also have been found that a factor, though competent to sell and to sue in his own name, is not the owner either of the property or of its price, but barely an agent to contract for his principal; and that his commission, except in very special cases, is revoked by his death. This familiar principle was directly decided in *Burdett* v. *Willet*, (2 *Vern.* 638), where it was held that the price of goods sold by a factor is payable not to his administrator, but to the merchant who consigned them to him; and it was held also in *Whitecombe* v. *Jacob*, (*Salk.* 160), as well as in many other cases collected in a note to it. The mispayment to Mr Vaughan consequently operated no discharge of the purchaser. The price might have been recovered on the contract of sale, at any time before the confirmation of the transaction by participating in the present proceeding; and it is plain, therefore, that it ought not to have been involved in the factor's estate. Whether the court would summarily order a stranger to the proceeding to bring it in, even if it were assets, it is at present unnecessary to say. The question, when it arises, will be whether a creditor can recover a claim immediately from a debtor to the estate, and not from the administrator or by his agency, but by the instrumentality of an order paramount to him, the court taking the administration of the assets into its own hands. It is enough for the present, however, that this proceeding is irregular and

must stop. This trust estate can be followed into the hands of Mr Dahlgren's executors who represent him in the management of the fund, only by a bill in equity or perhaps by an action for money had and received. The rule must, therefore, be discharged, the money struck out of the auditor's report, and the decree affirmed for the residue.

Decreed accordingly.